```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  TYESHAH CARR, on behalf of herself
  and all others similarly situated,
                                           MEMORANDUM & ORDER
                    Plaintiff,             21-CV-6557(EK)(JRC)

              -against-


  JOHNSON & JOHNSON CONSUMER INC. and
  VOGUE INTERNATIONAL LLC,

                    Defendants.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiff Tyeshah Carr brings this putative class action against Defendants Johnson & Johnson Consumer Inc. ("JJCI") and Vogue International LLC ("Vogue"), alleging that their haircare products contained a dangerous chemical that caused her hair loss and various scalp injuries.  She alleges claims for design defect, failure to warn, and negligence.  Defendants now move to strike the class allegations in the complaint.  Defendants have not yet answered or moved to dismiss, and Plaintiff has not yet sought to certify the proposed class.  For the reasons set forth below, the motion to strike is denied without prejudice to renew.

## I. Background

        The following recitation is taken from the complaint. Vogue and JJCI develop, market, and distribute a line of shampoo

and conditioner products under the brand name "OGX" (the "OGX Products"). Compl. ¶¶ 27-29, ECF No. 1. In February 2021, Carr alleges, she (and her daughter) "used OGX Products" as directed on the product label. *Id.* ¶¶ 13, 62, 64. (Despite the reference to "OGX Products," plural, she identifies by name only one product that they used — the "OGX Renewing and Argan Oil of Morocco" product. *See id.* ¶ 14.)

After washing, Carr suffered "significant hair loss" and "hair thinning," and her "once healthy" hair "became brittle" and "fell out in clumps." *Id.* ¶¶ 15, 64-65. She further experienced "severe scalp irritation, redness, rashes, itching, and burning." *Id.* ¶ 64. Carr's daughter suffered "a similar injury, with significant hair loss." *Id.* ¶ 65. After Carr stopped using the OGX Products, she no longer experienced any "new hair loss, hair thinning, or scalp irritation." *Id.* ¶ 66. Similarly, her daughter's "hair loss slowed" after she stopped using the products. *Id.*

The OGX Products in question contained "DMDM hydantoin," a chemical compound that works as a preservative and releases formaldehyde. *Id.* ¶¶ 4, 14, 35-36. According to the complaint, medical and scientific studies over the last few decades have shown the "harmful effects" of formaldehyde and DMDM, linking the chemicals to reactions such as dermatitis, itchiness, and red rashes. *Id.* ¶¶ 4, 37-39.

Carr alleges that Defendants have known about the harms associated with DMDM "for approximately a decade." *Id.* ¶ 61. In August 2012, for example, JJCI committed to phasing "formaldehyde and other harmful ingredients" out of its adult personal care products by the end of 2015. *Id.* ¶¶ 5, 50. JJCI's own commitments, as well as DMDM-related litigation against an industry competitor and online consumer reviews of DMDM-containing products, also put Defendants on notice of DMDM's effects. *Id.* ¶¶ 48–59. Defendants removed DMDM from their OGX Products in or around September 2021. *Id.* ¶¶ 9–10.

Carr brings strict products-liability and negligence claims against Defendants on behalf of the following class:

> All residents of the United States who purchased OGX Products containing DMDM and suffered hair loss, thinning hair, or other injuries after using the product, who have retained Squitieri & Fearon, LLP as their counsel, and who have not separately filed a lawsuit against Defendants by the date of the class certification order.

*Id.* ¶ 67. She alleges that the OGX Products caused an "unreasonably high rate of adverse dermatological and other reactions" due to DMDM — indeed, that "hundreds or thousands of other consumers" also suffered hair loss or other injuries from them. *Id.* ¶¶ 2, 92. And Carr alleges that Defendants could have used non-DMDM alternatives as preservatives or reduced the amount of DMDM in their products. *Id.* ¶ 91. She also alleges

3

that Defendants failed to warn consumers about the risks posed by the OGX Products. *Id.* ¶¶ 96–105.

## II. Legal Standards

### A. Motions to Strike Class Allegations

Under Rule 12(f), a court may, *sua sponte* or on a motion, "strike from a pleading" "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Separately, Rule 23 calls for the court to determine "whether to certify the action as a class action" at "an early practicable time after a person sues . . . as a class representative." Fed. R. Civ. P. 23(c)(1)(A).

"Motions to strike under Rule 12(f) are rarely successful." *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 52 (E.D.N.Y. 2017).[1] "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015). For this reason,

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

"district courts in this Circuit have frequently found that a determination of whether Rule 23 requirements are met is more properly deferred to the class certification stage, when the court has before it a more complete factual record from which to make its determination." *Greene*, 262 F. Supp. 3d at 53.  In other words, a motion to strike class claims is generally "considered premature if the issues raised are the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013).

Against that background, courts within the Second Circuit generally grant motions to strike class allegations in only two circumstances.  First, a motion to strike may be appropriate for early resolution if it "addresses issues separate and apart from the issues that will be decided on a class certification." *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 292-93 (S.D.N.Y. 2015).  This was the case in *Rahman v. Smith & Wollensky*, for example, where the basis for the Rule 23 motion to strike — exhaustion of absent members' claims — was "an issue separate and apart from the issues . . . decided on a class certification motion." *See* No. 06-CV-6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008) (Francis, M.J.).

5

Second, a court may grant a motion to strike if the defendant can "demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015). Defendants bring their motion to strike on this second basis. Defs. Mot. to Strike ("Defs. Mot.") 9, ECF No. 23-1.

**B.   Standards for Class Certification**

Because Defendants assert that it would be impossible to certify the alleged class, the Court briefly sets out the standards for certification. A plaintiff must first establish the factors set out in Rule 23(a): that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). A plaintiff must also prove that the action falls within one of three categories under Rule 23(b) — namely, that: (1) prosecuting separate actions would create a risk of inconsistent or prejudicial adjudications; (2) the conduct of the defendant applies generally to the class; or (3) questions of law or fact common to class members predominate

6

over those affecting individual members.  Fed. R. Civ. P. 23(b).[2] Finally, the Second Circuit "recognize[s] an implied requirement of ascertainability" — that is, it must be "feasible for the court to determine whether a particular individual is a member" of the class.  *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

Before certifying a class, the district court must conduct a "rigorous analysis" to determine that the prerequisites of Rule 23 are met.  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405, 407 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)); *see In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) ("A district judge is to assess *all of the relevant evidence* admitted at the class certification stage and determine whether each Rule 23 requirement." (emphasis added)).  This requirement, too, may be read to counsel against the premature assessment of class allegations on a motion to strike.

### III.  Discussion

Defendants assert that the putative class is impossible to certify because Carr's claims of injury are

---

[2] Plaintiff facially pleads that class action status is warranted under each of Rule 23's three subsections.  *See* Compl. ¶¶ 71-81.  Defendants' motion focuses on any class that would be certified under Rule 23(b)(3).  The Court does not address the viability of any proposed class moving for certification under Rule 23(b)(1) or Rule 23(b)(2).

"highly individualized." *See* Defs. Mot. 9-15. They also argue that the proposed class, as defined, (i) demonstrates that joinder of all class members *is* actually practical and (ii) constitutes an impermissible "fail-safe" class, further rendering certification inappropriate. *See id.* at 15-17. Because these and related issues are better resolved at a later time, it would be premature to strike the class allegations now.

**A. The "Highly Individualized" Nature of Plaintiff's Claims**

Defendants' argument regarding the "highly individualized" nature of injury here primarily implicates two separate Rule 23 requirements: typicality under Rule 23(a)(3) and predominance under Rule 23(b)(3).

Typicality requires that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Minor variations in the fact patterns underlying the individual claims do not preclude a finding of typicality." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-06 (S.D.N.Y. 2015). Predominance, in turn, is established when the "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues

8

subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013). That some individual inquiries may arise does not preclude predominance, so long as common questions predominate. *E.g.*, *Dover v. Brit. Airways, PLC (UK)*, 321 F.R.D. 49, 58 (E.D.N.Y. 2017).

Defendants contend that the proposed class can never satisfy these Rule 23 requirements because "the claims asserted by Plaintiff are highly individualized and personal to each [class] member." Defs. Mot. 14. Based on the pleadings alone, Defendants surmise, Carr and the putative class members should have "different medical histories, and different allergies and skin sensitivities," have "used different hair care products under different circumstances, for different periods of time, and at different points in time," and have "suffered different and unspecified alleged injuries." *Id.* at 15 (emphases removed). In support of their argument, Defendants survey various decisions within and without the Second Circuit in which the district court evaluated class allegations in products-liability cases. *Id.* at 8–14.

As courts within the Second Circuit have recognized, "the class action device typically is not very useful in mass tort cases, which tend to 'present significant questions, not only of damages but of liability and defenses of liability,

9

. . . affecting the individuals in different ways.'" *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 396 (S.D.N.Y. 2008) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Because "injuries among class members differ widely" and "the facts on which liability will be based vary significantly from individual to individual," courts "have been reluctant to find" typicality or predominance in products-liability actions. 5 James Wm. Moore et al., Moore's Federal Practice § 23.24[8][h] (3d ed. 2009); 7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1805 (3d ed. 2005).

Indeed, because of these individualized injuries, courts have refused to certify proposed classes in products-liability suits for failing to satisfy the requirements of typicality or predominance, or both (among other deficiencies). *See, e.g.*, *In re Fosamax*, 248 F.R.D. at 401 (holding that the named plaintiffs' claims were not typical of osteoporosis drug users, given the "highly individualized proof" required "to establish most elements of a medical monitoring claim"); *In re Rezulin Prod. Liab. Litig.*, 210 F.R.D. 61, 66–68 (S.D.N.Y. 2002) (denying certification of Rule 23(b)(3) class for injuries caused by prescription drug because "individual questions, particularly but not limited to causation and reliance, overwhelm those common issues"); *In re Methyl Tertiary Butyl*

10

*Ether (MTBE) Prod. Liab. Litig.*, 241 F.R.D. 435, 449 (S.D.N.Y. 2007) (denying certification of Rule 23(b)(3) subclass injured by gasoline spill because "the disparities in the injuries, and the questions of whether the gasoline caused such injuries" could not satisfy predominance requirement).

Defendants' points regarding the distinct challenges to certifying a products-liability class are therefore well-taken.  Well-taken but still premature: in each of the *Fosamax*, *Rezulin*, and *MTBE* cases, the court's refusal to certify the products-liability class came on a motion for class certification — *after* the parties had the benefit of discovery and the opportunity to fully brief the Rule 23 issues.[3]  Issues

---

[3] Indeed, in every *out-of-circuit* products-liability case cited by Defendants here, too, the court was ruling on (and denying) a motion for class certification — not a Rule 12(f) motion.  *See* Defs. Mot. 11-13 (citing *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 460–61 (E.D. La. 2006); *Sweet v. Pfizer*, 232 F.R.D. 360, 372 (C.D. Cal. 2005); *Zehel-Miller v. Astrazenaca Pharms., LP*, 223 F.R.D. 659, 663–64 (M.D. Fla. 2004); *Jones v. Allercare, Inc.*, 203 F.R.D. 290, 306–07 (N.D. Ohio 2001); *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 629–32 (D. Kan. 1996); *Davenport v. Gerber Prods. Co.*, 125 F.R.D. 116, 117–18 (E.D. Pa. 1989); *Caruso v. Celsius Insulation Res., Inc.*, 101 F.R.D. 530, 535 (M.D. Pa. 1984); *Sanders v. Tailored Chem. Corp.*, 570 F. Supp. 1543, 1543–44 (E.D. Pa. 1983)).

There are some in-circuit cases in which district courts struck the class allegations on a Rule 12(f) motion.  Those cases, however, are distinguishable.  In *Camacho v. City of New York*, No. 19-CV-11096, 2020 WL 4014902, at *3–4 (S.D.N.Y. July 16, 2020), the court struck class allegations on numerosity grounds because the record, *after* early discovery, made clear that the class would only consist of sixteen members.  And in *Borgese v. Baby Brezza Enterprises LLC*, No. 20-CV-1180, 2021 WL 634722, at *4–6 (S.D.N.Y. Feb. 18, 2021), among other deficiencies identified by the district court, the complaint did not plausibly identify any other class members, such that it failed to satisfy Rule 23(a)'s requirements, and did not indicate which state laws applied, such that it failed to satisfy predominance under Rule 23(b)(3).  Defendants do not raise such challenges — at least in any developed fashion — here.

11

relating to typicality and predominance, in particular, are ripe for the further factual development and expert discovery. *See, e.g., Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020) (denying motion to strike based on challenge to commonality, predominance, and superiority because "it would be premature to decide this fact-specific argument at this juncture"); *Steele-Warrick v. Microgenics Corp.*, No. 19-CV-6558, 2021 WL 1109052, at *14 (E.D.N.Y. Mar. 22, 2021) (declining to strike class claims that may involve "individualized inquiries into proximate causation" because discovery could corroborate plaintiff's allegations to satisfy predominance).

At this stage, the Court cannot confidently evaluate the nature and full extent of the individualized issues that Plaintiff's claims may raise, and whether those individualized issues render her claims non-typical or predominate over any common questions of law or fact. *See Med. Soc'y of New York v. UnitedHealth Grp. Inc.*, No. 16-CV-5265, 2018 WL 1773142, at *2 (S.D.N.Y. Apr. 12, 2018) ("Whether questions common to the class predominate over individualized issues is precisely the sort of determination that the Court would make at the class certification stage."). The complaint alleges — at least facially — some issues of fact or law that *may* be common and typical to all class members, including: a "common course of misconduct" by Defendants; typical injuries to the hair and

12

scalp after use of the OGX Products; and common questions of "whether OGX products contained DMDM, whether DMDM is unreasonably dangerous, whether Defendants were aware of the dangers, and whether Defendants failed to adequately inform consumers about those dangers." Pl. Opp'n 19, 21, ECF No. 24; *see* Compl. ¶¶ 69, 75, 80.

Thus, despite the uphill certification battle that Carr may face down the line, the Court is not prepared to dispose of the Rule 23 issues presented at this stage — with no factual record, based simply on assumptions drawn from the complaint and the conclusions of other courts examining generally similar *types* of allegations. *See Garcia v. Execu|Search Grp., LLC*, No. 17-CV-9401, 2019 WL 689084, at *4 (S.D.N.Y. Feb. 19, 2019) (declining to strike allegations where defendant's factual assertions were "unmoored from any factual record" and "based only on its own perspective of the disputed merits").

B. **Challenges Regarding the Class Definition**

Defendants also raise two challenges based on their reading of the class definition in the complaint. As noted above, Carr proposes to define the class, in pertinent part, as: "[a]ll residents of the United States who purchased OGX Products containing DMDM and suffered hair loss, thinning hair, or other injuries after using the product, who have retained Squitieri &

Fearon, LLP as their counsel." Compl. ¶ 67. Defendants assert, first, that this limitation to Plaintiff's counsel's clients demonstrates that joinder is practical (and thus that Plaintiff cannot establish numerosity). Defs. Mot. 15-16. They further argue that the putative class is an impermissible "fail-safe" class — that is, a class defined by reference to the ultimate liability issue. *Id.* at 17. Because these issues are also best resolved at a later time, I decline to strike the class allegations on either ground.

Striking class allegations based on the putative class definition runs counter to the general principle that, at the certification stage, "[a] court is not bound by the class definition proposed in the complaint." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). Instead, "the court may, in its discretion[,] modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies." *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 267 (E.D.N.Y. 2016); *see Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) ("A district court . . . is empowered to carve out an appropriate class."). This counsels against addressing these two issues now.

1. Fail-Safe Class

The Court turns first to Defendants' argument that the proposed class is an impermissible fail-safe class. *See* Def.

14

Mot. 17. Courts typically refuse to certify fail-safe classes, which "require[] a court to decide the merits of individual class members' claims to determine class membership." *Nypl v. JP Morgan Chase & Co.*, No. 15-CV-9300, 2022 WL 819771, at *9 (S.D.N.Y. Mar. 18, 2022). These classes "tend to be defined in terms of a legal injury" or "by reference to a particular statute, regulation, or contract that has been allegedly violated or breached." *Garcia*, 2019 WL 689084, at *2; *see, e.g.*, *Spread Enterprises, Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 69 (E.D.N.Y. 2014) (subclasses defining members as those "charged excessive fees" were fail-safe because "class membership would depend on whether or not the Defendants were found liable for overcharging").

Carr's proposed class requires members to have purchased Defendants' OGX Products and experienced hair loss or other injuries after using those products. *See* Compl. ¶ 67. At first blush, it is not obvious that this proposed definition incorporates the liability element at the heart of her claims (at least not explicitly). *See generally Duffy v. Illinois Tool Works, Inc.*, No. 15-CV-7407, 2021 WL 9471902, at *10 (E.D.N.Y. Sept. 30, 2021) (class definition that required use of Rain-X product and a specific injury — repair or replacement of the prong sensor — was not fail-safe). More importantly, though, "concerns about the potential 'fail-safe' nature of the proposed

15

class are best resolved at the class certification stage, not through a motion to strike." *Owens v. Starion Energy, Inc.*, No. 16-CV-01912, 2017 WL 2838075, at *9 (D. Conn. June 30, 2017). The Court denies Defendants' motion to strike on this ground.

2. <u>Numerosity</u>

More compelling is Defendants' argument that, by limiting the class to those "who have retained Squitieri & Fearon, LLP as their counsel," *see* Compl. ¶ 67, Plaintiff cannot establish that joinder is impractical. Defs. Mot. 15-16; *see* Fed. R. Civ. P. 23(a)(1). While "[n]umerosity is presumed for classes larger than forty members," the "inquiry is not strictly mathematical" and instead "must take into account the context of the particular case." *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).

Here, Defendants argue, joinder "is not only practicable, but effectively effortless" because the putative class is limited to "individuals comprised exclusively of counsel's clients." Defs. Reply Br. 8 n.4, ECF No. 25 (emphases removed). Indeed, Carr alleges that the "identities and addresses of the class members can be readily determined from records maintained by Squitieri & Fearon, LLP." Compl. ¶ 68. And it is true that "knowledge of names and existence of members" strongly weighs against a finding of numerosity "precisely because it renders joinder practicable." *See*

16

*Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410-11 (S.D.N.Y. 1998).

This aspect of the class definition appears novel, to put it charitably — even beyond its implications for the numerosity analysis.[4] Nevertheless, Defendants have invoked numerosity as the primary basis for challenging the class definition. And like other Rule 23(a) requirements, numerosity is a fact-intensive inquiry better resolved at the class certification stage. In deciding whether joinder is practicable, courts are directed to consider the number of class members and other factors, including: "judicial economy," the "geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux*, 987 F.2d at 936. However unconventional this aspect of the class definition may be, the Court declines to strike the class allegations on this ground at this time.

---

[4] As Defendants point out, among other potential issues, a class defined to only include counsel's clients threatens to end-run the adequacy requirement in Rule 23(a)(4), as well as the Court's power to appoint class counsel under Rule 23(g). The Court leaves these questions for another time.

17

### IV. Conclusion

For these reasons, Defendants' motion to strike is denied without prejudice to renew.

SO ORDERED.

                                                    /s/ Eric Komitee
                                                    ERIC KOMITEE
                                                    United States District Judge

Dated:     May 17, 2023
             Brooklyn, New York